[No. 4884.]

THE BOARD OF COUNTY COMMISSIONERS OF PUEBLO COUNTY v. STRAIT.

1. **Constitutional Law—Statutes—Amendments—Report of Conference Committee.**

In the passage of the act of 1899 (Sess. L. 1899, p. 331, c. 134), fixing the salary of the clerk of the district court in counties of the second class, the report of the conference committee

recommending amendments to the original bill and the adoption of the report, but not recommending the passage of the act, was adopted by the ayes and noes, and the names of those voting were entered on the journal. Held to be a sufficient compliance with §22, art. 5, of the constitution, providing that no bill shall become a law except by a vote of the majority of all the members of each house, nor unless on its final passage the vote taken by ayes and noes and the names of those voting be entered upon the journal, and also to be a sufficient compliance with §23 of the same article, providing that no amendment to any bill by one house shall be concurred in by the other, nor the report of any conference committee be adopted in either house, except by a vote of the majority of the members elected thereto, taken by the ayes and noes, and the names of those voting recorded on the journal.—P. 141.

2  Same—Statutes—Amendments—Report of Conference Committee.

.  Where a bill was passed by the house and then amended and passed by the senate, in which amendments the house refused to concur, the subsequent adoption by the house of a report of the conference committee, including some of the amendments adopted by the senate, was a sufficient concurrence in such amendments.—P. 145.

3.  Same—Statutes—Printing Amendments.

Section 22, art. 5, constitution of Colorado, providing that all substantial amendments to bills shall be printed for the use of members before the final vote is taken on the bill, does not apply to amendments recommended by a conference committee of the two houses.—P. 145.

*Appeal from the District Court of Pueblo County.*
*Hon. N. Walter Dixon, Judge.*

Action by L. B. Strait against the Board of County Commissioners of Pueblo County. From a judgment in favor of plaintiff, defendant appeals.

*Reversed.*

Mr. N. C. Miller, attorney general, Mr. E. E. Hubbell and Mr. John M. Waldron, for appellant.

Mr. H. Riddell, for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court:

The appellee (plaintiff in the district court) brought his action to recover certain moneys paid by him as clerk of the district court of Pueblo county to the county treasurer. Prior to 1899, the salary of the clerk of the district court of Pueblo county was fixed by the law of 1891 at the sum of $2,500. By the act of 1899 (Laws of 1899, p. 331), the salary of the clerk of the district court of counties of the second class was fixed at the sum of $2,000. Pueblo, for the purpose of fixing the salaries of public officers, is a county of the second class. During the years 1901, 1902 and 1903, the said clerk paid to the county treasurer the amount of fees collected by him as such clerk in excess of the expenses of his office and the sum of $2,000. Claiming that the act of 1899 was unconstitutional, and that the law of 1891 fixing the salary at the sum of $2,500 had never been repealed, he made the payments of these amounts under protest. Judgment was rendered in his favor for the sum of $1,500, being the sum paid under protest during the years 1901, 1902 and 1903. From this judgment the board of county commissioners appealed.

The act of 1899, it is alleged, is unconstitutional and void because the legislature failed to observe the provisions of the constitution in its passage. The specific objections are:

1. Said act was never assented to by the senate and house of representatives by a vote of a majority of the members elected thereto, taken in the manner prescribed by the constitution.

2. Material parts of said act of 1899 were incorporated into it by the senate as amendments, and were never concurred in by the house of representatives in the manner prescribed by the constitution.

3.    By the adoption of the conference committee report material amendments to said bill were adopted which were never printed before the final vote on said bill was taken, as prescribed by the constitution.

The bill, H. B. 143, originated in the house, where it was regularly passed, after being amended in the committee of the whole house, on February 15th, 1899. The bill was amended in the senate. The house refusing to concur in the senate amendments, a conference committee was appointed. The conference committee reported that it had had said bill under consideration, "and beg leave to submit the following report, and recommend that it be adopted. The following amendments are made to said bill as amended in the senate.". Then follow numerous amendments recommended by the committee. The report of the committee is entered in the house journal of the 85th day, being March 29th, 1899. At the afternoon session of the following day, March 30, the report of the conference committee having been laid before the house, Mr. Dickerson's motion that the report of the committee be not concurred in and that another committee be appointed was lost by a vote of 12 for, and 46 against, the motion. The report of the committee was then adopted by a vote of 50 yeas, 10 nays. The names of those voting on the motion to not concur and on the motion to adopt the report were taken by ayes and noes, and the names of those voting entered upon the journal. On April 1st, the conference committee report was read in the senate, and immediately thereafter the motion to adopt the report was carried by an aye and nay vote; for the report 27, against the report, none. The names of those voting being entered in the journal. Following the roll-call on the motion to adopt the report of the conference

committee, the house journal recites: "A constitutional majority of all the members elected to the house of representatives having voted in the affirmative, the bill is passed." Following the roll-call on the adoption of the report of the conference committee, the senate journal recites: "A majority having voted in the affirmative, the report was declared adopted." The only other recitals in the journals after these are those which state that the announcement was made that the bill was about to be signed, and was signed, in the presence of the members.

In the determination of the questions involved, it is necessary to consider sections 22 and 23 of the constitution. Section 22 provides that "* * * all substantial amendments made thereto, shall be printed for the use of members before the final vote is taken on the bill, and no bill shall become a law except by a vote of a majority of all the members elected to such house, nor unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal." Section 23 provides: "No amendment to any bill by one house shall be concurred in by the other, nor shall the report of any conference committee be adopted in either house except by a vote of a majority of the members elected thereto, taken by ayes and noes, and the names of those voting recorded upon the journal thereof." The house had refused to concur in the senate amendments, and because of this disagreement a conference committee was appointed. The bill classified the counties and fixed the salaries of county and district officers; and the conference committee reported a bill that differed materially from the bill as passed by the senate or the one originally passed by the house. The journals contain no roll-call upon the final passage of the bill, unless the vote on the adoption of the conference committee report

shall be regarded as the vote on final passage. We are, then, confronted with a situation which requires us to either approve or disapprove a practice of the legislative assembly in the passage of bills. To disapprove of this practice may lead to great confusion in governmental affairs, and although that fact should not, and would not, have a controlling influence, it should have great weight, and we should resolve any doubt in our minds in favor of the validity of the legislative procedure. Moreover, we should show great deference to the legislative construction of the constitution, particularly with reference to its construction of the procedure provided by the constitution for the passage of bills.

Endlich, in speaking of the weight that should be given to the practical construction of the constitution by officers acting under it, says: ''The greatest deference is shown by the courts to the interpretation put upon the constitution by the legislature, in the enactment of laws, and other practical application of constitutional provisions to the legislative business, when the interpretation has had the silent acquiescence of the people, including the legal profession and the judiciary, and especially when injurious results would follow the disturbing of it.'' —Endlich on Interpretation of Statutes, §527.

''Greater weight is also given to the practical construction of forms of procedure than to that which concerns the substance of legislation. When there is a real doubt of the proper interpretation of a constitutional provision relating to the course of procedure, it should be solved in favor of the practical construction given it by the legislature.''—Cooley's Constitutional Limitations, 86.

The provision of the constitution: ''Nor shall the report of any conference committee be adopted in either house except by a vote of a majority of the

members elected thereto, taken by ayes and noes, and the names of those voting be recorded upon the journal thereof," undoubtedly refers to the final vote upon bills reported from conference committees, because all the solemnity attendant upon the passage of bills is required to be observed in the vote upon such report. If the report in this instance had been confined to the classification of counties and the amounts of salaries determined by either house, and had recommended that the bill as amended by the conference committee be passed, then there would probably be no question raised concerning the regularity of the legislative procedure; but the conference committee recommended a classification of the counties, and salaries for officers, differing materially from the bills passed by either branch of the general assembly, and did not in terms recommend that the bill pass as so amended, but recommended that the report be adopted.

We are not without serious doubts as to the correctness of the legislative practice, and we are not prepared to say that, unaided by the legislative construction of the articles of the constitution, our construction would have been the same; but it is our duty to resolve the doubt in favor of the validity of the act. Although the report of the conference committee does not recommend the passage of the bill as amended by the committee, the vote upon the adoption of the report was taken by ayes and noes, and the names of those voting were entered upon the journals of the respective houses, and both houses regarded the adoption of the report as the passage of the bill. The journal of one branch declared that the bill was passed. The bill was signed by the presiding officer of each house. The journals contain recitals showing that, before signing, the presiding officer of each body announced that he was about to

sign, and did sign, the bill in the presence of the body over which he presided.

Counsel state that it is the practice of conference committees to report all sorts of things, and amendments of bills are among their most usual acts. The bill under consideration dealt mainly with the amounts of the salaries to be paid public officers. As the two houses could not agree, it was the province of the conference committee to submit a report recommending amounts to be fixed as salaries upon which the two houses could agree. And as the very purpose of a conference committee is to effect a compromise, we are not prepared to say that the conference committee that had the bill now before us under consideration exceeded its legitimate powers, or performed functions belonging to the body of the legislature, in recommending the fixing of salaries for officers differing in amount from those fixed by the bill of either house. And in at least two other instances at the same session of the general assembly, conference committees reported amounts differing from those fixed by the respective houses, and the reports of these committees do not recommend that the bills as amended by the conference committee be passed, but that the amendments be concurred in. An examination of various journals fails to show a uniform practice in the recommendations of conference committees. When an agreement has been reached the practice has been to call the roll upon the motion to adopt or reject the report, and enter the names of those voting for and against the motion in the journal. The adoption of the report of the conference committee has, as far as we are advised, been regarded as the passage of the bill, and this whether the report recommended the passage of the bill, a concurrence in the amendments proposed, or merely the adoption of the report.

The conference committee recommended that the bill as amended by the senate be further amended; and as the house never concurred in the senate amendments, but refused to so concur, it is insisted that, as the house never gave its assent to the senate amendments, the bill was not constitutionally passed. The legislative practice, as shown by an inspection of the journals of several sessions, is to recommend amendments that change materially the bills as passed by the separate bodies of the general assembly; and we are of opinion that the adoption of the report of this conference committee, which recommended that the bill as amended by the senate be further amended, is the equivalent of a concurrence by the house in the senate amendments and the assent to the amendments proposed by the conference committee.

As to the third objection, that relating to the printing of the amendments made by the adoption of the conference committee report, we are of opinion that the section mentioned (22) does not apply to amendments recommended by a conference committee, but does apply to the ordinary legislation, and means that all substantial amendments made to bills by either house shall be printed before the final vote is taken. Unless we adopt this view or hold that a conference committee cannot propose amendments, the section which requires the vote by ayes and noes and the record thereof in the journal upon the adoption of the report of conference committees is meaningless, and the procedure through the conference committee is of no greater effect than that through any other committee. In this matter also we should show great deference to the legislative construction. And an examination of the various journals shows that many of the important laws now upon the stat-

utes have been passed in substantially the same man-
ner as the bill under consideration.

As our duty requires to resolve any doubt we
may have in favor of the legislative procedure, we
must uphold it in this instance.

The judgment is reversed.            *Reversed.*