F. PRICE SMITH, Appellant, v. W. H. THOMPSON, County Auditor (Substituted Defendant for FRANK S. LAMAR), Appellee, F. C. HUBBELL et al., Intervenors.

No. 42327.

DECEMBER 11, 1934.

REHEARING DENIED MAY 17, 1935.

Yeaman, Yeaman & Yeaman, Brown & Margolin and Graham & Graham, for appellant.

Edward L. O'Connor, Attorney-general, Clair E. Hamilton, Assistant Attorney-general, Max E. Duckworth, County Attorney, and Franklin E. Gill, Assistant County Attorney, for appellee.

Carl Adams, for intervenors.

ANDERSON, J.—This case involves the validity of chapter 89 of the Laws of the Forty-fifth General Assembly, known as the Salary Reduction Act.

Plaintiff states in his petition, and it is admitted in the record, that he was duly elected treasurer of Woodbury county, Iowa, in November, 1932, and on January 1, 1933, he qualified as such and assumed the duties of said office; that his salary amounting to $3,775 per annum or $314.58 per month had been fixed and determined by the board of supervisors in accordance with the provisions of the 1931 Code, and he had drawn his salary on that basis up to the month of May, 1933; that on June 1, 1933, the plaintiff made written demand upon the auditor for the issuance of a salary warrant to him in payment of his salary for the month of May, 1933, in the sum of $314.58, which demand or request was refused by the auditor of Woodbury county for the reason that the Forty-fifth General Assembly had passed an act known as Senate File No. 479 (now chapter 89 of the Acts of the Forty-fifth General Assembly), reducing the salary of county treasurers, and a warrant was tendered to the plaintiff by the county auditor in the sum of $229.12, the reduced amount of the salary of the county treasurer as fixed by the provisions of the legislative act referred to; that the plaintiff refused to accept the warrant representing the reduced salary for the month of May, 1933, and commenced this action in mandamus to compel the issuance and delivery to him of a warrant in the sum of $314.58, and alleging the invalidity of the act of the legislature referred to. Answer was filed by the county auditor and Woodbury county, and petition of intervention was also filed

by certain named taxpayers who asserted that they were taxpayers and property owners in Woodbury county, and would be adversely affected if the plaintiff should prevail, and joined with the defendants in the defense of the action. There was a trial to the court upon the issues presented and a finding and judgment dismissing plaintiff's petition. The plaintiff appeals.

The appellant assigns numerous errors and relies upon several propositions of law, all attacking the validity of the act in question. We will notice some of them.

■ The appellant contends that the act is in contravention of section 29 of article 3 of the state constitution because it contains two or more subjects, two or more objects, and is omnibus in form, subject, and object. Section 29 of article III of the constitution provides:

"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

It is true that the title to the act is omnibus in form, and, to some extent at least, unintelligible and misleading. For instance, the first clause of the title reads, "An Act to repeal section fifty-one hundred twenty-six (5126) and enact a substitute therefor and to amend sections eighty-eight-c one (88-c1)", and approximately fifty other and different sections contained in at least eleven different chapters of the Code. The first clause of the title, quoted above, is not again referred to in the act itself. Again sections 5221, 5223, 5225, 5229, and 5231 are included in the title as sections to be amended. These numbered sections are not again mentioned in the body of the act. Again section 29 of the act reduces the compensation of the members of the General Assembly and the lieutenant governor and this change is not mentioned in the title. Again we find that the sections of the act itself are not numbered consecutively, sections 31, 35, 37, 39, 41, and 52 being omitted from the bill as enrolled, which condition adds to the confusion and unintelligible feature of the title. However, the last clause of the title recites, "all relating to statutory salaries and compensation of state, county, and city officers", and this must be held to be a description of the subject-matter and object of the act in question.

892

█ The omnibus form and incongruous subjects appearing both in the title and body of the act indicates a hurried, if not careless, consideration in the preparation of the bill as presented to the legislature and as finally considered by it, which cannot be commended or approved, and which necessarily must have some weight in the consideration of the constitutional legality of the act which we will later discuss. However, we are of the opinion that the discrepancies and errors which we have noted are not sufficient in themselves, without more, upon which to base a holding that the act is invalid.

█ Inasmuch as the general assembly in drawing the title saw fit to specifically enumerate the sections of the statutes which it proposed to repeal or amend, rather than to draw the title in general language, it must be held that the omission in the title of any reference to the sections governing the salary of the members of the general assembly and of the lieutenant governor must be held to invalidate section 29 of the act (section 29, article 3, state constitution; Henkle v. Keota, 68 Iowa 334, 27 N. W. 250) and this invalidity must be considered as having a bearing upon the constitutionality of the act, which we will later discuss.

█ It is also claimed by the appellant that the act is not uniform in operation, is class legislation, and is in contravention of section 6 of article 1 of the state constitution which provides that "all laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." We are constrained to hold that the act is not subject to this attack. This operation of the act applies equally to all citizens who fall within any particular class, as mentioned in the act. It is apparently true that the classification adopted does not bring within the influence of the act all of the state, county, and municipal officers, but it is not necessary that the salaries of all state, county, and municipal officers be determined upon the same basis. It must be conceded that the legislature has the power to fix and determine salaries of all officials where they have not delegated that power to some other governmental agency. Salaries of state and other officers are fixed in the sound judgment of the legislature with a view to, and a knowledge of, the amount of work to be done in each particular office or class of offices. The act in question extends to and includes equally all

persons who are or may be in like or similar circumstances and is uniform in its operation and application; and it cannot be said where salary differences are based on population, the amount of work to be done, and the responsibility in each particular office, that the fixing and determining of the salaries of the respective officers and the offices included in this act is arbitrary or unreasonable, or that it does not have uniform operation or application, or that it grants to any citizen or class of citizens privileges or immunities which upon the same terms do not belong to all citizens falling within the various classes. Polk County v. Cope, 176 Iowa 19, 157 N. W. 245; City of Des Moines v. Bolton, 128 Iowa 108, 102 N. W. 1045, 5 Ann. Cas. 906; Cook v. Marshall County, 119 Iowa 384, 93 N. W. 372, 104 Am. St. Rep. 283; Clear Lake Live Stock Association v. Weir, 200 Iowa 1293, 206 N. W. 297.

Some question is made as to the right of the legislature to reduce the salaries of public officers during the term for which they are elected, but it must be conceded, as a general rule, that the relation between a public officer and the people is not in the nature of a contract, and that such office has in it no element of property. It is a public trust, created for the benefit of the state and not for the benefit of the individual citizens thereof, and the prospective emoluments of a public office are not property in any sense. Crozier v. Lyons, 72 Iowa 401, 34 N. W. 186; Eckerson v. City of Des Moines, 137 Iowa 452, 115 N. W. 177; Shaw v. City Council of Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S.) 825, 9 Ann. Cas. 1039. It must be held that the legislature has the power to fix and determine salaries of all officials where they have not already delegated that power to some other governmental agency, if such power is not limited or proscribed by constitutional provisions. Cook v. Marshall County, 119 Iowa 384, 93 N. W. 372, 104 Am. St. Rep. 283. And it follows that the act in question is not subject to attack on the part of the appellant in the instant case on the ground that it reduces his salary as county treasurer during the term for which he was elected.

A further question is presented to the effect that one whose rights are affected by one portion of a statute may not question the constitutionality of the act, or another portion of it, where the operation of the provision affecting him will not be changed or influenced by the invalidity of a contested provision. This contention is sound unless the unconstitutional portion of the

statute, which does not affect directly the person attacking it, in fact affects the validity of the entire act. And this brings us to a consideration of the first important question presented upon this appeal.

It must be conceded that a statute may be in part constitutional and in part unconstitutional; and if such part or parts are wholly independent of each other and separable so that the constitutional part may stand while that which is unconstitutional may be rejected, the statute may stand by the elimination of the unconstitutional part. 50 C. J. 639, section 205; Davidson Building Co. v. Mulock, 212 Iowa 730, 235 N. W. 45; State v. Soeder, 216 Iowa 815, 249 N. W. 412.

In this case we have first section 29 of the act which reduces the compensation of the members of the general assembly and the lieutenant governor with no reference thereto in the title, and, as we have indicated, this section must be held to be unconstitutional and invalid. We also have sections 26 and 27 of the act reducing the salaries of the judges of the supreme court and of the district court. These provisions are concededly in contravention of section 9, article 5, of the state constitution, which provides that the compensation of the supreme and district court judges "shall not be increased or diminished during the term for which they shall have been elected." Such was the holding of the trial court, and it is so conceded in the presentation of the case in this court. We have then first to consider whether the sections of the act referred to reducing the salaries of the judges are simply inoperative or invalid. Section 57 of the act provides that it shall be in full force and effect on the first day of the month following its enactment and publication. The act was approved April 24, 1933, and published April 29, 1933, and became effective on May 1, 1933. It will be noticed that the sections relating to the reduction of the salaries of the judges do not contain any statement as to when the same should become operative, and under section 57 of the act, which we have referred to, the sections reducing the salaries of the judges was intended to become effective on the day that the act became in full force and effect. Under this situation it must be held that the sections referred to were and are absolutely invalid as being in direct contravention of section 9, article 5, of the state constitution. The question now presents itself as to whether the elimination of sections referred to, including section 29, heretofore mentioned, invalidates the entire act. It must be noted in this connection that the act contains no

saving clause, and that by the omission of such clause and the recitals in sections 54 and 57 of the act to the effect that an emergency exists, and that on account of the financial and economic conditions in Iowa it is necessary to reduce the salaries to conserve the expenditure of funds, that it was intended by the legislature that the whole of said act should be enforced, and the question immediately arises, Would the act have been approved by the legislature had the unconstitutional and invalid provisions been eliminated? The elimination of the unconstitutional provisions must be held, in a measure, to destroy the intended and declared purpose and object of the legislation as indicated in section 54 of the act. As we have indicated, the act does not contain a saving clause. If such clause was inserted, the presumption might be that the legislature intended the act as divisible and separable, but there being no such clause, the presumption must prevail that the legislature intended it to operate as a whole. This presumption is re-enforced and made positive by the recitation in section 55 of the act, "that all provisions of the code, 1931, and laws of the forty-fourth (44th) general assembly, relating to salaries be amended, revised and codified in accordance herewith."

In Elks v. Conn, 186 Iowa 48, 172 N. W. 173, the rule of intent and interpretation of a statute is said to be:

"This intent is to be determined by means of the rules of interpretation, and not alone from the abstract and permissible definition of the terms used. The statute should be construed with reference to its general purpose and aim, and this involves the consideration of its subject-matter, and the change in or addition to the law. It is proper to take into consideration the law as it was before, the mischief sought to be remedied, and the nature and the reason of the remedy. The several sections of an act are to be construed as parts of a connected whole, and harmonized, if possible. Appellant cites authority to these propositions: That, if the intention of the legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law; that the reason of the law will prevail over its letter, especially where the literal meaning would work an injustice; that words may, accordingly, be rejected and others substituted; that every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object, it is proper to consider the occasion and necessity for its enact-

ment, the difficulties or evils in the former law, and the remedy provided by the new one; and the statute ought to be given that construction which is best calculated to advance its object and suppress the mischief and secure the benefits intended."

It is obvious from the above that the intent of the legislature is the controlling element. In ascertaining such intent, it is proper to take into consideration the object sought by the legislature, the surrounding circumstances, and the context of the act under consideration. The act in question definitely points out the intent and object of the legislature, and that is, a conservation of the state finances by the reduction of salaries of public officials as an emergency proposition and of immediate importance. In Vol. 6, section 125, of R. C. L., we find this text:

"It may therefore be stated, as an additional test for determining whether the provisions of a statute are severable, that whenever the ruling feature of a law, or an essential part from which the remaining portions take their cast, is unconstitutional, the act must fall as a whole. * * * It is clear that the invalidity of one section of a statute which is in material relation to its other portions so as to modify, restrict, or extend its application, will cause the failure of such other portions also. Frequently a single part of an act may be of so great importance that, although in itself it may not be an inducing cause for the enactment of the legislation, its invalidity may render the whole act void."

We find the further text in the same volume in section 122 as follows:

"If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their entirety. it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly the entire statute is invalid."

In the section following (123), it is further stated:

"One of the tests used to determine whether a statute is or is not severable so that a portion may be rejected, is that it ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional; but where the valid and the invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid. This test is merely a means of ascertaining and carrying out the presumed intention of the legislature. If it appears that the invalid portion was designed as an inducement to pass the valid, the inference is that the legislature would not have passed the valid portion alone."

In City of Dubuque v. C., D. & M. R. Co., 47 Iowa 196, this court said:

"It is claimed that this section is compensation or inducement for the remainder of the statute, and that, this section being held unconstitutional, the whole act is void. It has been held to be a sound construction of a statute that when one section thereof is void and others valid, yet, if it evidently appears that one section is a compensation or inducement for another, and the connection between them is such as to warrant the belief that the valid part would not have been passed alone, then the whole should be held void. Slauson v. Racine, 13 Wis. 398."

See, also, Flannagan v. Jepson, 177 Iowa 393, 158 N. W. 641, L. R. A. 1918E, 548; State v. Executive Council, 207 Iowa 923, 223 N. W. 737; Geebrick v. State, 5 Iowa 491.

In Geebrick v. State, supra, we held that where one part of an act is constitutional and another part of the act is unconstitutional, is so framed that the portion of it which is unconstitutional is a part of the constitutional part, the whole act must fail.

It will be noticed that one of the pronounced lines of distinction in the various cases relative to a statute invalid in part, and being sustained as to that part which is valid and rejected as to that part which is invalid, is whether or not the statute under consideration relates to two or more subjects or objects; if it relates to two objects, one being void, the other may still be complete within itself and valid, but if the declared purpose and intent of the statute is to accomplish a single object only, and some of its

provisions are void, the whole act must fail unless sufficient remains to effect the declared object without the aid of the invalid part. See Cap. F. Bourland Ice Co. v. Utilities Co., 180 Ark. 770, 22 S. W. (2d) 993, 68 A. L. R. 1018. It follows that the point to be determined here is whether the unconstitutional provisions are so connected with the general scope of the act as to make it impossible, if they are stricken out, to give full effect to what appears to have been the intent of the legislature. As bearing upon the question under consideration, see Treasurer of Fayette County v. Bank, 47 Ohio St. 503, 25 N. E. 697, 10 L. R. A. 196; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; Chicago, M. & St. P. Ry. Co. v. Westby (C. C. A.) 178 F. 619, 47 L. R. A. (N. S.) 97; Santo v. State, 2 Iowa (Cole) 164, 205, 63 Am. Dec. 487; Davidson Building Co. v. Mulock, 212 Iowa 730. 235 N. W. 45.

Where the act is single as to its objective, or seeks to obtain a single object or purpose, then if part of the act is unconstitutional, such part cannot be separated from the constitutional part if they are connected and dependent upon each other so that if you reject the unconstitutional part you destroy the legislative intent, then the whole act must fall.

In the instant case, the legislature has declared the object, the intent, and the purpose of the act, and mandatorily said that it shall and must be in force in accordance with such declared intent, purpose, and object. We are constrained to hold that the provisions of the act applying to the various officers are so connected and interdependent in object and subject-matter, meaning, and purpose that the elimination of the objectionable or unconstitutional sections would result in a condition not contemplated or desired by the legislature. And it follows that the whole act must be declared unconstitutional and invalid.

The next and final question which we will notice involves what is known as the Enrolled Bill Rule, and in order to discuss this intelligently it is necessary to notice first the legislative history of the act involved. It appears from the record that there was introduced in the lower house of the legislature a bill known as H. F. No. 290, to amend certain sections of the Code and to reduce statutory salaries of state officers. This bill was introduced in the house of representatives on February 14, 1933, and passed the house on

February 23, 1933. On February 24, 1933, it was received in the senate and later referred to a sifting committee.

It further appears from the record that there was introduced in the house on February 14, 1933, a bill known as H. F. No. 291, which had for its purpose the reduction of statutory salaries of city officers and officials of municipal, juvenile, and superior courts. This bill passed the house on February 24, 1933, and was later received in the senate, and on March 16, 1933, referred to the sifting committee of that body.

It further appears that on February 14, 1933, a bill was introduced in the house known as H. F. No. 292, which had for its purpose the reducing of statutory salaries of county officers and the fixing of salaries of their deputies. This bill passed the house on February 24, 1933, was received in the senate and referred to the sifting committee of that body on March 16, 1933.

Just what occcurred in the senate after these bills were received and referred to the sifting committee is not definitely shown. However, it is fair to assume that there was prepared and presented to the senate a substitute for the three bills which had previously been passed by the house. What is known in the record as Senate File No. 479, no doubt was such substituted bill. This substituted bill was not concurred in or approved by the house and was apparently referred to a conference committee composed of members of both the house and senate, and the record in reference to any later consideration of the bill as shown by the journal of the house is found on page 1521 of that journal, and purports to be a "report of the conference committee on Senate File No. 479." This conference committee report appears to be supplementary to a prior report and recommends that "the House recede in its amendments to the Senate File No. 479, as it passed the Senate, and that said bill then be amended in accordance with the first conference committee report filed by this conference committee." A motion was made "that the House adopt the report of the conference committee and the supplementary report thereof on Senate File No 479 and concur in the amendments as proposed therein." The question put to the House was, "Shall the House adopt the report of the conference committee on Senate File No. 479 and the supplementary report and concur in the amendments as proposed therein?" The ayes and nays were called upon this question, resulting in the adoption of the motion.

It nowhere appears in the record that the House ever voted upon the Senate Bill No. 479, or that the ayes and nays were called and recorded on the question of the final adoption or passage of the act.

Section 17 of article III of the state constitution provides:

"No bills shall be passed unless by the assent of a majority of all the members elected to each branch of the General Assembly, and the question upon the final passage shall be taken immediately upon its last reading, and the yeas and nays entered on the journal."

The bill known as Senate File No. 479 was signed by the Speaker of the House, the President of the Senate, and the Governor, enrolled, and deposited in the office of the secretary of state. The appellee contends that when so signed, enrolled, and filed, it becomes the ultimate exclusive and conclusive evidence, not only of its contents, but as to its constitutional journey through the legislature. And this is the question we are now confronted with. Under the record before us, it must be held that the act in question was never before the House for an aye and nay vote on its final passage, and that the adoption of the fragmentary report of the conference committee did not suffice and did not meet the constitutional requirement that a vote "shall be taken immediately upon its last reading, and the yeas and nays entered on the journal." We then must determine whether appellant is permitted to go back of the enrolled bill and show that as a matter of fact the act in question was not passed and adopted by the House as the constitution provides. We are constrained to hold that this may be done. If an act claimed to have been passed by the legislature is in fact not passed, there is no authority in the presiding officers of the House and Senate to attest the same by their signatures, and no authority in the Governor to approve, and no authority in the secretary of state to receive, file, and publish the same, and such acts including the enrollment of the bill cannot make an act valid as a law unless it is an expression of the legislative will, and unless it has been constitutionally passed and adopted by both branches of the legislature. Marshall Field & Co. v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294; U. S. v. Ballin, 144 U. S. 1, 12 S. Ct. 507, 36 L. Ed. 321.

Under the common-law rule, the enrolled bill was a verity and resort could not be had to the journals of the legislature to impeach the bill. Many of the states of the Union have recognized this com-

mon-law rule and method of proving the passage of the bill by the legislature, but in the states so holding, we are unable to find that such holding is in contravention of any of the provisions of their state constitutions.

There seems to be three distinct and different rules as applicable to the enrolled bill recognized by the various courts of this country. The first of these rules appears to be that the enrolled bill is the ultimate proof and exclusive and conclusive evidence that the bill passed the legislature in accordance with the provisions of the constitution. Such has been the holding in California, Georgia, Kentucky, Texas, Washington, New Mexico, Mississippi, Indiana, South Dakota, and maybe some others.

The second of the rules seems to be that the enrolled bill is a verity and resort cannot be had to the journals of the legislature to show that the constitutional mandates were not complied with by the legislature, except as to those provisions of the constitution, compliance with which is expressly required to be shown on the journal. This rule has been adopted in South Carolina, Montana, Oklahoma, Utah, Ohio, New Jersey, United States, and others.

The third of the rules seems to be that the enrolled bill raises only a prima facie presumption that the mandatory provisions of the constitution have been complied with and that resort may be had to the journals to refute that presumption, and if the constitutional provision is one, compliance with which is expressly required by the constitution to be shown on the journals, then the mere silence of the journals to show a compliance therewith will refute the presumption. This rule has been adopted in Illinois, Florida, Kansas, Louisiana, Tennessee, Arkansas, Idaho, Minnesota, Nebraska, Arizona, Oregon, New Jersey, Colorado, and others.

It is claimed by the appellee in the instant case that the first rule as to an enrolled bill providing that it shall be the exclusive and conclusive evidence and ultimate proof as to the regularity of the passage of the bill through the legislature has been adopted in Iowa, and that we cannot go back of the enrolled bill to ascertain whether or not the constitutional provisions in reference to the passage and adoption of bills in the legislature have been complied with, and rely upon the cases of State v. Lynch, 169 Iowa 148, 151 N. W. 81, L. R. A. 1915D 119, and Davidson Building Co. v. Mulock, 212 Iowa 730, 235 N. W. 45, to sustain their position.

In State v. Lynch, supra, the question before the court was whether or not the failure of the Speaker of the House to sign an enrolled bill invalidates the bill. And this court held that the absence of such signature would, and did, invalidate the bill. The signature of the Speaker of the House is a constitutional requirement, but no more required to be observed than is the constitutional requirement that the House shall keep a journal and that the yea and nay vote of the members upon the final passage of a bill shall be recorded therein.

In the Davidson Building Company case, supra, the question before the court was whether the same bill had passed both houses, and it was held there that the enrolled bill must be conclusive evidence of the text of the bill. There is dictum in both of the cited cases which announces or approves the first division of the enrolled bill rule, which we have mentioned. The argument used as supporting this dictum in both of the cited cases is based in part upon the case of Marshall Field & Co. v. Clark, supra, from which extended quotations are made, and also upon the cases of Duncombe v. Prindle, 12 Iowa 1, and State v. Clare, 5 Iowa 508. We do not think the cited cases support the argument or the rule announced in the Davidson Building Company case or in State v. Lynch.

In the Marshall Field Company case, the court said:

"The argument, in behalf of the appellants, is that a bill, signed by the speaker of the house of representatives and by the president of the senate, presented to and approved by the president of the United States, and delivered by the latter to the secretary of state, as an act passed by congress, does not become a law of the United States if it had not in fact been passed by congress. In view of the express requirements of the constitution, the correctness of this general principle cannot be doubted. There is no authority in the presiding officers of the house of representatives and the senate to attest by their signatures, nor in the president to approve, nor in the secretary of state to receive and cause to be published, as a legislative act, any bill not passed by congress." And further in the opinion the court said: "To what extent the validity of legislative action may be affected by the failure to have those matters entered on the journal we need not inquire. No such question is presented for determination."

Therefore, we cannot see that the Marshall Field case is any authority for holding that the enrolled bill is the exclusive and conclusive evidence of its constitutional passage through the legislature. The cases of State v. Clare, 5 Iowa 508, and Duncombe v. Prindle, 12 Iowa 1, arose under legislation enacted under the Constitution of 1846, and that constitution provided that "every bill having passed both Houses, shall be signed by the Speaker and President of their respective Houses", and did not contain the requirement we now find in section 17, article III, of our present constitution, which we have heretofore quoted. On January 21, 1857, during the constitutional convention then in session, section 16 of the Constitution of 1846, was amended by adding thereto, "and on the final passage of all bills the vote shall be by ayes and nays and entered upon the journal". It would appear from the foregoing history that whatever quality as evidence the constitution makers believed the enrolled bill carried, they became convinced that it was not sufficient evidence as to the legal passage of the bill by both branches of the legislature, and adopted the constitutional requirement that journals be kept in both houses, and that upon the final passage of a bill the yeas and nays of the members be called and recorded. It therefore appears conclusively that the cases of State v. Clare, supra, and Duncombe v. Prindle, supra, are of no value as precedents, since the provision of the constitution existing at the time the opinions were adopted in those cases has been abrogated and the substitute referred to adopted.

In the Davidson Building Company case, supra, this court also cites and quotes from State ex rel. Pangborn v. Young, 32 N. J. Law 29. This case has been overruled by the Supreme Court of New Jersey as appears in Ex parte Hague, 104 N. J. Eq. 31, 144 A. 546. And in the last cited case we find a most exhaustive review of authorities dealing with this question. In the New Jersey case the court notes the fact that in twenty-eight states and also in Marshall Field & Co. v. Clark (U. S.), supra, it has been held competent to impeach the journals of the legislature directly, while but nine states hold to the contrary. And the case overrules the Pangborn-Young decision.

The North Carolina court has apparently made the distinction plain in Union Bank v. Oxford Commissioners, 119 N. C. 214, 25 S. E. 966, 34 L. R. A. 487, and Comr's. of Stanly County v. Snuggs, 121 N. C. 394, 28 S. E. 539, and from these cases the American

and English Encyclopedia of Law (2d Ed.) on page 559 of volume 26 bases the following text:

"Where the constitution contains no provision requiring entries on the journal of particular matters, such as, for example, the call of the yeas and nays on a measure in question, the enrolled act cannot in such case be impeached by the journal; but where the state constitution provides such formalities in the enactment of laws as require a record on the legislative journals, these journals are conclusive not only as against a printed statute published by authority of law, *but also against a duly enrolled act.*" (Italics ours.)

The distinction indicated in the foregoing quotation is clearly applicable to the case at bar, because our state constitution, article III, section 17, requires entry on the journals of each house of the ayes and nays of members voting on the final passage of bills, and this provision of our constitution is mandatory. Taft Co. v. Alber, 185 Iowa 1069, 171 N. W. 719.

In Taft Co. v. Alber, supra, in discussing the state constitution, this court said:

"The people are sovereign, and speak through their Constitution, and, when they thus speak, its mandates are binding upon all people, and on the legislature, which is but one of the agencies of government. * * * All departments of government and officers are only the instrumentalities through which the government acts. They are, in one sense, the agencies through which the government acts, and all the power and authority to act and the manner of acting are controlled by the fundamental law found in the constitution. We start, then, with the proposition that the provisions of our constitution are mandatory, and that their mandates bind as closely and as firmly the legislative branch of the government as they do the citizen of the commonwealth. The legislative branch must obey the constitution or fundamental law, and must follow and obey its requirements and directions. It is true some courts have held that constitutional provisions are not mandatory. This court, however, has held consistently that the provisions of the constitution are mandatory and binding upon the legislature, and that any act that contravenes the provisions of the constitution, or fails to come up to the measurement of the constitutional requirements, is not binding upon the people or any of the agencies of government." Citing

Koehler & Lange v. Hill, 60 Iowa 543, 14 N. W. 738, 15 N. W. 609; State v. Lynch, 169 Iowa 148, 151 N. W. 81, L. R. A. 1915D 119.

The Iowa cases bearing upon the question now under discussion, it appears to us, have not definitely determined the question.

In Duncombe v. Prindle, 12 Iowa 1, the question decided was as to the text of the bill.

In Koehler et al. v. Hill, 60 Iowa 543, 14 N. W. 738, 15 N. W. 609, the question was the entry of a resolution to amend the constitution on the journal of the two houses in successive general assemblies. This involved the prohibition amendment, and the constitution requires the entry of the amendment on the journals of the houses in two successive general assemblies. It was held a failure to do this invalidated the amendment.

In Miller v. Oelwein, 155 Iowa 706, 136 N. W. 1045, we had under discussion the violation of a joint rule requiring the signature of the presiding officer in the presence of the assembled body.

In State v. Lynch, 169 Iowa 148, 151 N. W. 81, L. R. A. 1915D 119, the question was as to whether or not a bill which had been signed by the President of the Senate but not signed by the Speaker of the House, approved by the Governor, and filed with the secretary of state as an enrolled bill had become a law, and this court held that the failure of the Speaker of the House to sign the bill invalidated it.

In Dayton v. Pac. Mutual Life Ins. Co., 202 Iowa 753, 210 N. W. 945, the question was, Did the same bill pass both houses?

In State v. Donehey, 8 Iowa 396, the question was whether the enrolled bill took precedence over other publications, and this court held that it did. This, however, was under the Constitution of 1846.

In State v. Clare, 5 Iowa 508, it was held that the ultimate proof of the law is the original act in the office of the secretary of state. This too, we have noted, was under the provision of the Constitution of 1846, and we are not disposed to disagree with this pronouncement. The enrolled bill is no doubt the ultimate proof of the text of the law, but not as to the constitutional requirements in its passage.

In Davidson Building Co. v. Mulock, 212 Iowa 730, 235 N. W. 45, the question was as stated in the opinion:

"The exact contention seems to be that the journals do not show that the two houses of the legislature concurred in the same bill."

It should be noted here that there is no constitutional require-ment for recording the bill in the journals of the two houses.

In analyzing the many decisions of the various states bearing upon the question we have under discussion, we must keep in mind that the common-law rule, which exists in many states, is that an enrolled bill is a verity and cannot be impeached by any evidence, no matter what kind or character the evidence may be, and no matter whether the attack is made upon the text of the bill or upon the question as to the regularity of its adoption by the legislature. From an extensive study of practically all of the cases throwing any light upon the question before us, we conclude that a bill may be attacked although it bears the signatures of the officers of the houses of the legislature and the governor, and has been enrolled and filed with the secretary of state, when it appears upon the face of the bill that it is violative of some constitutional provision. And that the bill may also be attacked, if its unconstitutionality does not appear upon its face, by proof of extrinsic facts showing that some mandatory constitutional requirement in its passage has not been complied with. It is the universal holding of the courts that any legislative act may be attacked as contravening some provision of the constitution if such situation appears in the text of the bill. There seems to be, however, quite a diversity of opinion in the courts as to the right to attack an enrolled bill on some constitutional ground which does not appear upon the face of the bill, but most of this diversity of opinion is dispelled by a reading and analysis of the various de-cisions in connection with the provisions of constitutions of the states in which the opinions were written. In Iowa, we have con-sistently held that our constitutional provisions are mandatory, and that they must apply to and govern the people as well as all govern-ment agencies, including the legislature.

We are met in the case at bar with the proposition of sustaining the mandatory provisions of the constitution, particularly section 17 of article III, or of ignoring and annulling such provision by hold-ing that chapter 89 of the Laws of the Forty-fifth General Assembly was validly enacted. We are firm in the judgment that any manda-tory provision of the constitution should not be annulled by judicial pronouncement, and the holding must be that the act in question in the case at bar is unconstitutional and invalid. We are of the opinion that the rule should be that an enrolled bill which bears the signa-ture of the presiding officers of both houses and the governor, and

filed in the office of the secretary of state, is the exclusive and conclusive proof and evidence of the text of the law as announced in such bill. And that such bill cannot be impeached except and unless it shows upon its face that it violates some constitutional provision, or that it be shown, by records which the constitution requires be kept by the legislature, that some mandatory provision of the constitution has not been complied with in its passage by the legislature, or the signing by the officers whose signatures the constitution requires to be attached thereto.

All prior decisions of this court touching the questions here determined are overruled so far as they may conflict with the holding herein announced.

It follows from the foregoing discussion that the district court erred in dismissing plaintiff's petition, and a reversal necessarily follows. The case is reversed and remanded with instructions that a judgment and decree be entered in accordance with this opinion. —Reversed and remanded.

MITCHELL, C. J., and ALBERT, KINDIG, KINTZINGER, and DONEGAN, JJ., concur.

STEVENS, J., dissents.

STEVENS, J. (dissenting)—Upon submission of this case, it was assigned to the writer to prepare an opinion. An opinion was prepared which, upon presentation to the court, was opposed by the majority. The same is now filed as an expression of the opposite view. This better preserves the coherency and continuity of the writer's theory.

The act of the legislature involved seeks by its terms to amend many sections of the Code relating to the salaries of public officers, as specified in said act. The issues before us present only questions relating to challenging the constitutionality of the said act. The bill, which included the several sections and provisions now constituting chapter 89, Laws of the Forty-fifth General Assembly, is known and designated in both houses as Senate File No. 479. The procedure in the respective houses in relation to said Senate File No. 479 will be later set out in detail in this opinion.

Two of the propositions urged and relied upon by appellant will be here considered together. They are that the act contains a

plurality of subjects and adopts a classification which is arbitrary, capricious, and without possible uniformity of operation.

It is provided by section 29, article III, of the constitution of this state that:

"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. * * * *"

It is also provided by section 6, article I, of the constitution that:

"All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

The title of the bill, omitting the multiplicity of sections of the Code referred to therein, is as follows:

"An Act to repeal section fifty-one hundred twenty-six (5126) and enact a substitute therefor and to amend sections * * * " all relating to statutory salaries and the compensation of state, county, and city officers. Each and every section of the statute sought to be amended by the bill is specifically referred to and designated in the title. Duality of title is asserted by appellant upon the ground that the act deals with the salaries of township assessors, justices of the supreme court, judges of the district court, and numerous other state, county, township, and municipal officers. It is pointed out in this connection that the sections sought to be amended are classified under and comprise a part of various chapters and titles of the Code. The fundamental reasons underlying the provisions of the state constitutions requiring that the title of every act shall embrace but a single subject has been frequently stated and elaborated upon by this court in prior decisions. Davidson Building Co. v. Mulock, 212 Iowa 730, 235 N. W. 45; Chicago, R. I. & P. R. Co. v. Streepy, 207 Iowa 851, 224 N. W. 41; State v. Gibson, 189 Iowa 1212, 174 N. W. 34; Clear Lake Co-op. L. S. S. Assn. v. Weir, 200 Iowa 1293, 206 N. W. 297. The following succinct statement by Judge Cooley will suffice at this point:

" 'It may therefore be assumed as settled that the purpose of these provisions was: First, to prevent hodgepodge or "log-rolling" legislation; second, to prevent surprise or fraud upon the legisla-

ture by means of provisions in bills of which the titles gave no inti-
mation, and which might therefore be overlooked and carelessly
and unintentionally adopted; and, third, to fairly apprise the peo-
ple, through such publication of legislative proceedings as is usually
made, of the subjects of legislation that are being considered, in
order that they may have opportunity of being heard thereon, by
petition or otherwise, if they shall so desire.' 1 Cooley's Constitu-
tional Limitations (8th Ed.) 295, 296." Davidson Building Co. v.
Mulock, supra.

The title to the present act is without ambiguity of any kind
and it is difficult to perceive how any one could have been misled
or deceived thereby as to the subject-matter, purpose, or object of
the proposed legislation. The subject, as already appears, was
salaries of designated public officers. The sections of the statute
relating thereto and which it was proposed to amend were clearly
specified and designated in the title. It is true that the various sec-
tions of the Code specified relate to and deal with the salaries of
many and widely differing officers. Neither the plurality nor diversity
of the officers, state, county, township, or municipal, referred to in
the bill necessarily suggests a duality of subjects. The object and
purpose of the proposal, obviously, was to reduce the salaries of the
public officers designated therein. No other purpose is expressed
or sought. The motives prompting the proposed legislation are ex-
pressed in section 54 of the bill. It is there recited that an emergency
existing in the state of Iowa, affecting the public welfare, required
that the salaries of the public officials designated in the bill be re-
duced. It would seem too clear for discussion that the title to the
bill is not subject to the challenge that it embraces a plurality of
subjects.

We are met at this point, however, with the further insistent
contention of appellant that the act is not of uniform operation and
for this reason violates section 6, article I, of the constitution of
the state of Iowa and also the Fourteenth Amendment to the Consti-
tution of the United States. This contention proceeds upon an obvi-
ous misconstruction of the constitutional provision or else a mis-
conception of the nature, object, and purpose of the act. The consti-
tutional provision invoked by appellant applies only to laws of a
general nature, laws which affect all citizens or classes. Such laws
must be of uniform operation and must not grant privileges or im-
munities to one or more classes which do not, upon the same terms,

equally apply to all citizens. The term "uniformity of operation" contemplates that all laws of a general nature shall be uniform and operate upon all persons in a like situation equally and without discrimination; that is to say, they must be general and uniform in their operation upon all persons in a like situation and this is not affected, necessarily, by the number of persons within the scope of their operation. McAunich v. M. & M. R. Co., 20 Iowa 338; Haskel v. City of Burlington, 30 Iowa 232; Iowa Railroad Land Co. v. Soper, 39 Iowa 112; Polk County v. Cope, 176 Iowa 19, 157 N. W. 245; Des Moines v. Bolton, 128 Iowa 108, 102 N. W. 1045, 5 Ann. Cas. 906; State of Iowa v. Garbroski, 111 Iowa 496, 82 N. W. 959, 56 L. R. A. 570, 82 Am. St. Rep. 524; Clear Lake Co-op. Ass'n v. Weir, 200 Iowa 1293, 206 N. W. 297; Midwest Mut. Ins. Assn. v. De Hoet, 208 Iowa 49, 222 N. W. 548; State v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218; Frost v. Corp. Commission (D. C.) 26 F. (2d) 508.

The act in question is in no sense a law of a general nature but is special in character and applies only to the salaries of certain designated offices or officers and affects such officers in their official capacity and not in their character as citizens. The classifications to which the act is made applicable existed long prior to the enact· ment of chapter 89. The act is special and limited strictly in its application to designated public offices then existing. It is amenda· tory in character and, except as the basis upon which the reduction of salaries is predicated, is probably more or less arbitrary. It creates no distinctions or discriminations. It is in its essence appli- cable only to a designated class or classes. The chapter comprises a large number of sections, each applicable to a designated office or officer. There is no reasonable basis for the contention of ap- pellant that it lacks uniformity of operation within the meaning and purpose of either the Fourteenth Amendment to the Constitution of the United States or of the provision of the state constitution quoted above.

II. We come now to consider what must be deemed as the major proposition relied upon by appellant, which is that the bill was not constitutionally passed by the legislature. The act originated in the Senate. Having duly passed that body, it was messaged to the House of Representatives where it was amended and returned to the Senate. The bill, known throughout its course in both branches of the legislature as Senate File No. 479, as amended, passed the

House by the vote of a majority of all the members elected to that branch of the legislature. It was read three times in the Senate and, as amended, read the third time in the House. The yeas and nays were duly recorded in each branch of the legislature upon the final vote and this fact is shown by the journals of the respective bodies. The amendments proposed by the House were rejected by the Senate. The House declined to recede. Thereupon, conference committees were appointed by the Senate and House. The conference resulted in an agreement to approve certain of the amendments proposed in the House. Being duly filed in each of the two houses, the report of the conference committee was finally adopted by a yea and nay vote. The question submitted to the House was in the following form:

"Shall the house adopt the report of the conference committee on Senate File No. 479 and the supplementary report and concur in the amendments as proposed therein?"

The vote was taken on the foregoing question and the yeas and nays recorded on the journal of the House. The same procedure was followed in the Senate.

The constitutional aspects of the question here presented are not new, but possibly the precise question now urged has not been fully dealt with in prior opinions of this court. The question is doubtless precluded by prior recent decisions of this court to which reference will be made presently, but we deem it not improper, because thereof, to consider the question upon the basis of the elaborate briefs and arguments of counsel.

It is provided by section 15 of article III of the constitution of the state of Iowa that "bills may originate in either house, and may be amended, altered, or rejected by the other; and every bill having passed both houses, shall be signed by the Speaker and President of their respective houses"; and by section 17 of the same article that "no bills shall be passed unless by the assent of a majority of all the members elected to each branch of the General Assembly, and the question upon the final passage shall be taken immediately upon its last reading, and the yeas and nays entered on the journal."

The bill, known as Senate File No. 479, was, as stated, passed to its third reading in both branches of the legislature. A bill is a proposal in prescribed form to one or the other of the branches of a legislative assembly for passage and enactment into law. Bills

may originate in either house and are, when presented to the other branch for passage, subject to amendment or rejection thereby.

Many state constitutions require that bills be read three times in each house. Section 17 of article III quoted above does not, in terms, include such requirement. It does require that the question upon final passage shall be taken immediately upon its "last reading." The custom prevailing in the Iowa legislature of having all bills read three times is in harmony with long established parliamentary practice in legislative assemblies. The precise origin of the practice is not definitely known but the custom has long been followed. See Iowa Manual of Legislative Procedure, compiled under the direction of the superintendent of the State Historical Society by authority of the Thirty-seventh General Assembly.

Although not specifically required by constitutional mandate, it may be assumed that the framers of the constitution contemplated that the custom of established parliamentary procedure in the particular involved would continue to be followed by the Iowa legislature. Perhaps it goes further than this. The constitution clearly contemplates more than a single or "last reading" of the bill but makes no specific provision therefor. The bill, as stated, was read three times in each of the respective branches of the legislature and finally adopted by a vote of yeas and nays which was duly recorded in the journals of the respective bodies. The bill, as passed, including the amendment, was not, however, read as a whole. The question before us rests for decision upon the proposition that the amendments proposed in the house and approved by the conference committee were not read in either branch three times, or the bill as amended so read. A bill as originally presented to one or the other of the branches of the legislature is a distinct proposal of a measure for enactment into law. It may be amended, altered, or rejected when sent by the house in which it originated to the other branch of the assembly.

Conference committees of legislative assemblies are also of ancient origin. The first record thereof is in the recorded proceedings of the English Parliament in 1378. Its use as an aid in legislation has continued generally by legislative bodies until the present time, except perhaps it is no longer employed by the English parliament. Luce on Legislative Procedure, p. 400; Law and Practice of Legislative Assemblies by Cushing, p. 336.

No doubt, the rules of the two houses of the Iowa legislature make due provision for the appointment of conference committees when deemed necessary or convenient. The procedure followed in the present instance has always been pursued in this state. There is some diversity of judicial opinion on the subject, but the overwhelming weight of authority holds that the adoption of the report of a conference committee on amendments by a vote of the yeas and nays, without a third reading, meets all of the constitutional requirements. State v. Dillon, 42 Fla. 95, 28 So. 781; People v. Thompson, 2 Cal. Unrep. Cas. 481, 7 P. 142; Board of Com'rs. v. Strait, 36 Colo. 137, 85 P. 178; Johnson v. City of Great Falls, 38 Mont. 369, 99 P. 1059, 16 Ann. Cas. 974; State v. Cronin, 72 Neb. 636, 101 N. W. 325; Browning v. Powers (Mo. Sup.) 38 S. W. 943; Robertson v. People, 20 Colo. 279, 38 P. 326; State v. Ryan, 92 Neb. 636, 139 N. W. 235, Ann. Cas. 1914A, 224; State v. Cox, 105 Neb. 75, 178 N. W. 913; Loomis v. Callahan, 196 Wis. 518, 220 N. W. 816; People v. Edmands, 252 Ill. 108, 96 N. E. 914; Mechanics Building & Loan Assn. v. Coffman, 110 Ark. 269, 162 S. W. 1090; State v. Corbett, 61 Ark. 226, 32 S. W. 686; Callison v. Brake (C. C. A.) 129 F. 196; Stephens v. Board of Commissioners, 79 Kan. 153, 98 P. 790; Brake v. Callison (C. C.) 122 F. 722; School Dist. No. 11 v. Chapman (C. C. A.) 152 F. 887. In a few jurisdictions, a contrary rule prevails: Norman v. Kentucky Board of Managers, 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556; State v. Boyer, 84 Or. 513, 165 P. 587; Glenn v. Wray, 126 N. C. 730, 36 S. E. 167, 169; Norman v. Kentucky Board of Managers of World's Columbian Exposition, 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556; Claywell v. Board of Com'rs., 173 N. C. 657, 92 S. E. 481; Cohn v. Kingsley, 5 Idaho 416, 49 P. 985, 38 L. R. A. 74.

Such is the history of legislative procedure in relation to the matters referred to and the status of judicial decision in this country.

Passing from the discussion of the question on its merits, we come now to consider what must be deemed the decisive rule in this state. The bill was duly enrolled in both houses, signed by the President of the Senate, the Speaker of the House, and approved by the Governor within the time allowed by the constitution. Thus attested, the enrolled bill becomes the exclusive and conclusive proof of its due and regular passage by the assembly. The rule and the reasons therefor are best expressed by the supreme court of the

United States in Marshall Field & Co. v. Clark, 143 U. S. 649, 12 S. Ct. 495, 497, 36 L. Ed. 294, as follows:

"And when a bill, thus attested, receives his [the president's] approval, and is deposited in the public archives, its authentication as a bill that has passed congress should be deemed complete and unimpeachable. As the president has no authority to approve a bill not passed by congress, an enrolled act in the custody of the secretary of state, and having the official attestations of the speaker of the house of representatives, of the president of the senate, and of the president of the United States, carries on its face a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by congress. The respect due to co-equal and independent departments requires the judicial department to act upon that assurance, and to accept, as having passed congress, all bills authenticated in the manner stated; leaving the courts to determine, when the question properly arises, whether the act so authenticated, is in conformity with the constitution."

The question was fully and elaborately considered and discussed in the case just referred to and in Davidson Building Co. v. Mulock, supra. The same conclusion was also announced in State v. Lynch, 169 Iowa 165, 151 N. W. 81, L. R. A. 1915D, 119, and Miller v. City of Oelwein, 155 Iowa 706, 136 N. W. 1045, and, while a slight departure therefrom is suggested in Dayton v. Pacific Mutual Life Ins. Co., 202 Iowa 753, 210 N. W. 945, such departure was disapproved in the Davidson case. Distinctions sought to be made by counsel in some of the foregoing cases upon the theory that what is said on the point under discussion was dictum is not persuasive. The doctrine, as stated above and approved by this and a majority of courts of other jurisdictions, is, in the view of the writer, a sound, safe, and workable rule. The consequences of a reversal of this rule in any jurisdiction cannot help but work much confusion.

III. One further proposition remains for consideration. It is that the sections of chapter 89 in which the legislature attempted to reduce the salaries of judges of the district and supreme courts is unconstitutional and inseparable from the act as a whole; that, this being true, the whole act must fail. The rule that an act will be declared unconstitutional as a whole when portions thereof, which

are inseparable therefrom, violate constitutional provisions is familiar and need not be here restated, but see State v. Executive Council, 207 Iowa 923, 223 N. W. 737, and cases there cited.

Appellant has not such an interest in the provisions of the act relating to the judiciary as entitles him to challenge the constitutionality thereof, unless the act as a whole must be declared invalid because such portions thereof are invalid. The legislature is forbidden by section 9, article V, of the constitution to increase or diminish the salary of judges of the supreme and district courts during the term for which they shall have been elected. Considered strictly according to the language of the sections of the present act dealing with salaries of judges, it is applicable thereto during the term for which such judges were already elected. Whether these provisions should be deemed void or merely inoperative until the terms of the respective judges of the supreme and district courts shall have terminated, the writer expresses no opinion, but see Schaffner v. Shaw, 191 Iowa 1047, 180 N. W. 853; Wilson v. Shaw, 194 Iowa 28, 188 N. W. 940.

The only possible sense in which the sections relating to the judges are inseparable, if unconstitutional, from the remaining sections of the act is that the same was passed in recognition and because of an asserted existing emergency affecting the public welfare. The motive of the legislature is thus clearly expressed. The measure was deemed essential under prevailing conditions. Of course, the legislature could legally have, by separate enactments applicable thereto, reduced the salary of each officer referred to in chapter 89, except judges. The sections of the act are necessarily separable. Each applies to a particular office or officer. The legislature may, for good reasons, have deemed it best, notwithstanding prevailing conditions, not to alter the salary of the governor or of certain minor officers. In such case, the legislature exercises a broad discretion. The act is necessarily separable and obviously does not offend the constitution at this point in the particulars or for the reason urged by counsel. The writer would, for the reasons stated, affirm.